### J. E. BETTS v. B. B. BOYD.

[FILED MAY 6, 1891.]

Summons: SERVICE: RETURN. A sheriff's return of *mesne* process in the words, "Received this summons the 27th day of July, 1888, and I hereby certify that on the 30th day of July, 1888, I served the within writ of summons on the within J. E. Betts, by delivering to him a true and certified copy of the same with all the indorsements thereon," *held*, sufficient under sec. 29 of the Code, and 22 of chap. 20, Comp. Stats.

ERROR to the district court for Cedar county. Tried below before KINKAID, J.

*Wilbur F. Bryant*, for plaintiff in error, cited: Murfree, Sheriffs, secs. 839–40.

*B. B. Boyd, pro se.*

Cobb, Ch. J.

This action was originally brought in the county court of Cedar county on the following bill of particulars:

"J. E. Betts,

"In account with B. B. Boyd, Dr.

"For attorney fees.........................................$25 00

"For which amount, with interest at seven per cent from January 2, 1886, plaintiff asks judgment."

Summons was issued, indorsed in the words and figures. of the bill of particulars, served by the sheriff, and returned as follows:

"Rec'd this summons the 27th of July, A. D. 1888; I hereby certify that on the 30th day of July, 1888, I served the within writ of summons on the within named J. E. Betts by delivering to him a true and certified copy of the same, with all the endorsements thereon."

Default was entered against the defendant. After the record of the default the following appears:

"Whereupon the plaintiff appearing in person and in his evidence admits a credit of $5, it is therefore found that the defendant is indebted to the plaintiff in the sum of $23.30, with interest from date."

On September 5, 1888, transcript of the judgment was taken on error by the defendant to the district court, and November 14 following, on hearing and argument, the judgment of the court below was affirmed.

The plaintiff in error brings it here for review on the following errors:

I. That the return of the sheriff was insufficient to show jurisdiction.

II. That there was no evidence before the court upon which to base a finding.

III. That the judgment was excessive.

The first error is that the sheriff's return was insuffi-

cient to show jurisdiction, or that it fails to show that a
copy of the writ was delivered to the defendant *personally*,
or was left at his usual place of residence, as required by
sections 29 of the Code, and 22 of chapter 20 of the Stat-
ute.   This objection seems wholly groundless and hyper-
critical.   In support of it, however, is cited an authority
on the law of sheriff's duties, to the effect that " Where by
statute, alternative modes of serving process have been pre-
scribed, it is required not only that the sheriff's return
shall show that the writ has been 'executed,' but it must
also show *how* it was executed, and which of the two or-
more statutory modes of bringing the defendant before the-
court was adopted by the officer." (Murfree on Sheriffs,
sec. 840.)

This rule was satisfied, and the statute was complied with
when it was shown by the return *how* the defendant was
personally served with process, " by delivering to him a
true and certified copy of the same," and not by leaving it
at his usual place of residence, as the alternative.   To *deliver*
is to give or transfer, as to deliver a letter, from one person
to another, or *mesne* process from the sheriff to the defend-
ant, who was thereby served *in person*, in compliance with
the statute.   In the *ten* decisions under sec. 69, as to the
service of process, it has not been held that the return
should run in the words of the section in order to estab-
lish a personal service.   Words which imply it precisely,
leaving no other construction, ought to be deemed suffi-
cient to establish the fact.

`In *Parker v. Starr*, 21 Neb., 680, the sheriff returned:
" I served this summons on S. S. in person, and S. E. S.
and C. S., by delivering to each of them a true and certi-
fied copy with all the indorsements thereon," was held to-
be sufficient—the process was *delivered* to them.   An actual
delivery, or a delivery in fact, is the transfer of the physi-
cal possession of the object *in esse*.

If the custom of noted speakers and writers in litera-
52

ture as a standard of accuracy has yet any authority, sufficient examples of personal service may be cited in the use of the word "deliver."

For Joseph said to the chief butler, "thou shalt *deliver* Pharaoh's cup into his hands," and from the same account it is certain that the third day the Egyptians had the cup. (Gen. xl : 13.)

And when Prince Hal. ordered the guard to *deliver* Falstaff over to the constables for his lying impertinence, it is not questioned that Sir John was under close arrest until again delivered from it. (VI Hen. IV.)

At the first day's battle of *Shiloh* the right of the enemy rested on the bank of the Tennessee river, "when two federal gunboats *delivered* their fire with vigor and effect," and personally to the commander-in-chief, who fell in this action. (U. S. G. Memoirs, vol. 1, p. 367.)

These are examples of actual, personal delivery in fact, on the usage of the word, from an early period to a more recent one.

The county court having ample jurisdiction, it is shown from the record that the defendant made default, that the plaintiff appeared and gave "his evidence," upon which the court found for the plaintiff and rendered judgment.

That the judgment is excessive is an objection that the plaintiff in error should have made at the trial in the lower court.

"In all cases of error, not of a jurisdictional character, before the aggrieved party can be heard in the court of error he should first seek relief at the hands of the court where the error occurred." (*Griggs v. Le Poidevin,* 11 Neb., 385.)

The errors in this case are not merely technical, they are frivolous. The judgment of the district court is

AFFIRMED.

THE other judges concur.